IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARL WAYNE BUNTION | § | |
| Plaintiff, | § | No. 4:22-cv-1125 |
| | § | *CAPITAL CASE* |
| v. | § | Execution scheduled for |
| | § | after 6:00 p.m., Thursday, |
| BRYAN COLLIER, et. al., | § | April 21, 2022 |
| Defendants. | § | |

## DEFENDANTS' OPPOSITION TO MOTION
## FOR STAY OF EXECUTION

Plaintiff Carl Wayne Buntion, a Texas death-sentenced inmate, has filed suit pursuant to 42 U.S.C. § 1983. Buntion was properly convicted and sentenced to death for the murder of Houston Police Officer James Irby in 1991, then re-sentenced to death in 2012 after a new punishment hearing was ordered by the Texas Court of Criminal Appeals. Buntion argues that, given his advanced age, health issues, and lengthy stay on death row, "his execution on April 21, 2022 would serve neither of the permissible purposes of the death penalty" and violates his rights under the Eighth and Fourteenth Amendments. ECF No. 1 at 8, 24–29.

But this Court lacks jurisdiction to grant a stay because Buntion does not meet the carve-out exceptions recognized in this Circuit that allow a stay of execution in civil rights lawsuits. Further, this Court lacks jurisdiction to grant relief in this action because Buntion raises a *habeas* claim, not a civil

rights claim, and Buntion therefore must file a motion for authorization to file a successive habeas petition. For these reasons, the Court should deny the extraordinary remedy of a stay of execution.

## FACTUAL AND PROCEDURAL HISTORY

### I.    Statement of the Case

#### A.    Facts of Buntion's capital murder

The Texas Court of Criminal Appeals (CCA) summarized the facts establishing Buntion's guilt of capital murder:

> The State's evidence[1] at trial established the following: At about 7:45 p.m., June 27, 1990, Houston police officer James Irby was on motorcycle patrol when he stopped a car on Airline Drive for a minor traffic violation. After parking his motorcycle, Irby approached the driver's side of the car and spoke briefly with the driver, who had already exited the vehicle. Irby and the driver, still conversing, walked toward the rear of the car. Irby then walked back to the driver's side of the car, looked in, and spoke briefly with [Buntion], who was the only passenger. Irby then returned to the rear of the car, where he continued speaking with the driver. [Buntion] then exited the car from the passenger's side. Irby motion to [Buntion] to get back in the car, but he proceeded toward Irby, and when he was about five feet from Irby, he raised a long-barrel revolver with both hands and fired a shot into Irby's forehead. Irby died almost instantly.

*Buntion v. State*, No. 71, 238 slip. op. at 1-2 (Tex. Crim. App. May 31, 1995) (footnote original).

---

[1]    [Buntion] presented no evidence during the guilt/innocence phase of his trial.

**B.     Evidence presented at Buntion's 2012 punishment hearing.**

The CCA summarized evidence presented at Buntion's new punishment

hearing in 2012:

> [Buntion] had thirteen prior felony convictions, many of which
> involved assaulting other people. Most notably, [Buntion] was
> convicted in 1965 of "assault to murder" an Alabama peace officer.
> Further, [Buntion] committed the instant offense a little over a
> month after he was released to parole while serving a sentence for
> the offense of sexual assault of a child. . . .
>
> In addition, [Buntion] committed numerous unadjudicated
> extraneous offenses and bad acts, both in and out of prison. During
> a previous term of imprisonment, [Buntion] was found to be in
> possession of a shank. While on a prison furlough, [Buntion] used
> his brother's birth certificate to obtain a visit with his ex-wife, who
> was in jail. When a jail official discovered [Buntion]'s true identity
> and the fact that he was on a prison furlough, the official arrested
> [Buntion] and returned him to prison. Approximately a week
> before the instant offense, [Buntion] showed an acquaintance a gun.
> He told her that he always carried it because he would rather
> kill than go back to prison. While in jail for the instant offense,
> [Buntion] threatened other detainees who asked him why he was
> there. [Buntion] said that he would kill them "like [he] killed the
> cop" if they did not leave him alone.
>
> Additional evidence indicated that [Buntion]'s character for
> violence had not changed during his time in prison. . . . While in
> jail awaiting the punishment retrial, [Buntion] wrote letters to his
> brother, Bobby. The letters contained language from which a jury
> could reasonably infer that [Buntion] remained a continuing
> threat to society. For example, in a July 2011 letter, [Buntion]
> stated that he was glad that he would never be released from
> prison because he would "hate to think about what [he would] do
> to certain people that have screwed [him] around." In an August
> 2011 letter, [Buntion] advised Bobby that if the district attorney
> questioned Bobby about Bobby's previous criminal record, Bobby
> should just say that the district attorney "made [Bobby] what [he

was]" by sending Bobby to prison on his first offense instead of giving him probation. "If they create a 'monster,' they should not complain when it feeds (on society.) right? [sic] Right."

*Buntion v. State*, 482 S.W.3d 58, 67–68 (Tex. Crim. App. 2016)

## II.   Conviction and Postconviction Proceedings

In January 1991, a Harris County jury found Buntion guilty of capital murder and sentenced him to death. 3 SHCR-04[2] at 638–40. His conviction and sentence were affirmed by the CCA on direct appeal. *Buntion v. State*, No. AP-71,238 (Tex. Crim. App. May 31, 1995) (unpublished). Buntion's initial state application for habeas relief was denied by the CCA in November 2003. *Ex parte Buntion*, No. WR-22,548-02 (Tex. Crim. App. Nov. 5, 2003) (unpublished).

Buntion then filed a petition seeking federal habeas relief that was provisionally granted by this Court on April 28, 2006, *Buntion v. Dretke*, 4:04-cv-01328 (S.D. Tex. April 28, 2006). The Fifth Circuit Court of Appeals, however, vacated that judgment and denied habeas relief.   *Buntion v. Quarterman*, 524 F.3d 664 (5th Cir. 2008), *cert. denied*, 555 U.S. 1176 (2009).

Following the Supreme Court's denial of certiorari review, Buntion returned to state court to file a subsequent state habeas application, alleging that his death sentence was invalid under *Penry v. Johnson*, 532, U.S. 782

---

[2] "SHCR" refers to the Clerk's Record of pleadings and documents filed with the state court during Buntion's most recent state habeas corpus proceedings, preceded by the volume number. *See generally, Ex parte Buntion*, No. WR-22,548-04, -05,

(2001). The CCA granted the writ, awarding Buntion a new trial on punishment. *Ex parte Buntion*, 2009 WL 3154909 (Tex. Crim. App. 2009).

The trial court held the new punishment hearing in February 2012, and Buntion was sentenced to death a second time. *Buntion v. State*, 482 S.W.3d 58, 65 (Tex. Crim. App. 2016). The CCA affirmed the trial court's sentence of death on direct appeal. *Id.* at 106. The Supreme Court denied certiorari review. *Buntion v. Texas*, 136 S.Ct. 2521 (2016).

Buntion next sought habeas relief from his new death sentence in the state court, but that application was denied by the CCA. *Ex parte Buntion*, 2017 WL 2464716 (Tex. Crim. App. June 7, 2017). The Supreme Court denied Buntion's petition for writ of certiorari. *Buntion v. Texas*, 138 S. Ct. 737 (2018).

Buntion subsequently filed a federal petition for habeas relief with brief in support on June 7, 2018, which this Court denied. *Buntion v. Lumpkin*, No. 4:17-cv-2683 (S.D. Tex. Mar. 5, 2020). The Fifth Circuit denied Buntion's application for a certificate of appealability, and the Supreme Court denied Buntion's petition for writ of certiorari on October 4, 2021. *Buntion v. Lumpkin*, 982 F.3d 945 (5th Cir. 2020), *cert. denied* 142 S.Ct. 3 (2021).

Buntion next filed a fifth state application for habeas relief; the CCA dismissed this application as an abuse of the writ. *Ex parte Buntion*, NO. WR-

22,548-05, 2022 WL 946264 (Tex. Crim. App. Mar. 30, 2022). Buntion has not filed a petition for writ of certiorari.

On April 6, 2022, Buntion filed a successive federal habeas petition, initiating *Buntion v. Lumpkin*, Civil Action No. 4:22-cv-1104. There, he raised two claims, including that his "execution would violate the Eighth Amendment because no legitimate purpose for the death penalty would be served by carrying out his execution after he has spent over thirty-one years under a sentence of death." *Id.*, ECF No. 1 at 33–39. The Court entered an order of dismissal without prejudice on April 15, 2022. *Id.*, ECF No. 8.

On April 11, 2022, Buntion filed a complaint pursuant to 28 U.S.C. § 2201; the Court dismissed his complaint without prejudice on April 15, 2022. *Buntion v. Lumpkin*, Civil Action No. 4:22-cv-1168, ECF Nos. 1, 4.

Pertinent here, on April 7, 2022, Buntion filed a complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. This proceeding follows.

## ARGUMENT

### I.   This Court Has No Jurisdiction to Grant a Stay of Execution in this § 1983 Proceeding.

Buntion has filed a habeas claim in the guise of a claim brought under 42 U.S.C. § 1983, followed by his Motion for Stay of Execution. ECF Nos. 1, 6. In the event the Court finds Buntion has properly raised his claim pursuant to 42 U.S.C. § 1983, the Court lacks jurisdiction to grant him the relief he seeks.

6

Traditionally, federal courts lack jurisdiction to stay an execution pursuant to § 1983. *See Beets v. Tex. Bd. of Pardons & Paroles,* 205 F.3d 192, 193 (5th Cir. 2000) ("This court has twice held that federal courts lack jurisdiction under § 1983 to stay executions."); *Faulder v. Johnson*, 178 F.3d 741, 742 (5th Cir. 1999) ("[W]e reiterate this court's recent holding that federal courts lack jurisdiction to stay executions under § 1983...."); *Moody v. Rodriguez*, 164 F.3d 893, 893 (5th Cir. 1999) ("Federal courts lack jurisdiction to stay executions under § 1983." (citation and quotation marks omitted)). But where a § 1983 claim does not imply the invalidity of Buntion's sentence and, thus, the Director's custody, it falls within an exception to this general rule. *Young v. Gutierrez*, 895 F.3d 829, 830-31 (5th Cir. 2018) (citing *Skinner v. Switzer*, 562 U.S. 521, 533–34 (2011)). However, Buntion explicitly ask for an injunction prohibiting his execution "both on April 21, 2022 and at any time in the future" due to the unconstitutionality of his death sentence. ECF No. 1 at 29-30. The error he alleges is incurable and permanent and, thus, does not meet any of the carve-out exceptions for a stay in a § 1983 action, as he is not challenging a state's procedures for DNA testing[3] or clemency proceedings.[4]

---

[3] *See Skinner*, 562 U.S. at 533–34; *see also id.*, 559 U.S. 1033 (2010).

[4] *Young*, 895 F.3d at 831 (finding jurisdiction where, "[a]t most, proceedings can result only in a stay until Young is afforded a clemency proceeding commensurate with the Constitution.").

The only other exception where a district court has the jurisdiction to grant a stay in a § 1983 proceeding is where a prisoner challenges the method of his execution. *Hill v. McDonough*, 547 U.S. 573, 580 (2006); *see also Nelson v. Campbell*, 541 U.S. 637, 645–47 (2004). Here, Buntion asserts he is raising a claim that is "concerned with the method by which the State intends to execute" him because "the State sent Buntion to death row by an unconstitutional process," delayed him "a constitutional trial for two decades," and "actively resisted [his] attempts to obtain a constitutional sentencing proceeding." ECF No. 1 at 8–9. But, contrary to his phrasing, he does not contest the means by which he will be executed in furtherance of his sentence; rather, he effectively takes issue with the assessment of the death penalty as his sentence. He is thus not challenging the method of execution, a fact necessarily conceded by his simultaneous and identical collateral attack on his death sentence in a successive habeas petition. *Compare* ECF No. 1 at 24–29, *with Buntion*, Civ. Action No. 4:22-cv-1104, ECF No. 1 at 33–39.[5] Therefore, law-of-the-case doctrine precludes examination of this issue as a civil rights claim. In sum, this Court is bound by the Fifth Circuit's precedent to dismiss this case and deny a stay for lack of jurisdiction.

---

[5] On April 15, 2022, this Court dismissed Buntion's habeas petition in Civ. Action No. 4:22-cv-1104 as successive. *Id.*, ECF Nos. 8, 9.

## II. There Is No Likelihood, Much Less a Substantial One, that Buntion Will Succeed on the Merits of His Claim.

Buntion argues in his Complaint that his rights under the Eighth and Fourteenth Amendments are violated by his lengthy incarceration on death row (*Lackey*[6] claim). ECF No. 1 at 8, 24–29. Even if Buntion's motion for stay could be reviewed on the merits, he fails to show he is entitled to a stay. As argued herein, Buntion meets none of the factors the Court may consider when evaluating a stay. Therefore, if not dismissed, Buntion's motion for a stay of execution should be denied.

### A. Standard of review

The Supreme Court has recognized a narrow exception to the general rule that prevents federal courts from granting stays where a state's execution procedures would not comport with the Constitution. *See Baze v. Rees*, 553 U.S. 35, 61 (2008); *Hill*, 547 U.S. at 583–85 (2006); *Nelson*, 541 U.S. at 650. But merely "[f]iling an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course." *Hill*, 547 U.S. at 583–84. Rather, "a stay of execution is an equitable remedy that is not available as a matter of right, and equity must be sensitive to the State's strong

---

[6]     *Lackey v. Texas*, 514 U.S. 1045 (1995); *see also Lackey v. Johnson*, 83 F.3d 116 (5th Cir. 1996).

interest in enforcing its criminal judgments without undue interference from the federal courts." *Nelson*, 541 U.S. at 649–50.

To be entitled to a preliminary injunction or a stay of execution, a movant must show "a substantial likelihood of success on the merits" and that the balance of harms tips in his favor. *See Tamayo v. Perry*, 553 F App'x 395, 398 (5th Cir. 2014) (citing *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (stay of execution), and *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (preliminary injunction)). When the requested relief is a stay of execution, a court must consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceed; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The remedy should only issue if the movant has clearly carried the burden of persuasion on all four requirements. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) ("'It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'") (quoting 11A Charles Alan Wright et al., Federal Practice and

Procedure § 2948 (2d ed. 1995) (alteration in original)); *Hill*, 547 U.S. at 484 ("[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits.") (citing *Barefoot v. Estelle*, 463 U.S. 880, 895-06 (1983), and *Mazurek*, *supra*.)); *see Nken*, 556 U.S. at 433–34 ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion.") (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)).

## B.   There is no likelihood of success on the merits of his claim.

### 1.   Buntion's claim is unexhausted.

Buntion admits he has not exhausted his claim as required under the Prison Litigation Reform Act (PLRA). ECF No. 1 at 22. Rather, he states that he presented this claim to the CCA in an application for habeas relief, which provided the court with an "opportunity to consider the merits," though the CCA ultimately dismissed that application as an abuse of the writ. ECF No. 1 at 23–24. But the PLRA strictly sets out the process for exhaustion, which Buntion concedes he did not follow. He cannot demonstrate a likelihood of success on the merits of a claim this Court cannot review, and his motion should be denied.

Section 1997(e) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is *mandatory* "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 739, 740–40 n.6 (2001); *see Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("[T]here can be no doubt that pre-filing exhaustion of [the] prison grievance processes is mandatory." (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)); *Jones v. Bock*, 549 U.S. 199 (2007)). The PLRA's exhaustion requirement applies to Buntion's challenge. *See Ross v. Blake*, -- U.S. --, 136 S. Ct. 1850, 1862 (2016) ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.").

In Texas, the exclusive avenue through which inmates must administratively exhaust their claims is through the prison grievance system. Tex. Gov't Code Ann. § 501.008; *see Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion."). And to properly exhaust, a prisoner must "pursue the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir.

12

2001). This requires completion of both steps of TDCJ's grievance process before a complaint may be filed. *Id*. Further, the Fifth Circuit has held that a federal court is not to inquire as to whether the administrative remedies are adequate. *Alexander v. Tippah Co., Mississippi*, 351 F.3d 626, 630 (5th Cir. 2003). Rather, the only inquiry as to exhaustion is whether such remedies were available. *Id.*; *see Murphy*, 942 F.3d at 714 (Elrod, J., dissenting).

Again, Buntion admits he did not pursue an administrative remedy; his reasoning for his inaction is irrelevant. Thus, PLRA mandates dismissal of the complaint. *But see Murphy v. Collier*, 942 F.3d 704, 709 (5th Cir. 2019).

### 2.    Buntion's claim is barred by the statute of limitations.

Section 1983 claims, which are best characterized as personal-injury actions, are subject to a state's personal-injury statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 279 (1985); *Walker v. Epps*, 550 F.3d 407, 412-14 (5th Cir. 2008). Texas's limitations period is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a). Although state law provides the applicable limitations period, federal law determines when the limitation period accrues. *Reed v. Goertz*, 995 F.3d 425, 431 (5th Cir. 2021), *pet. for cert. filed,* No. 21-442 (Sept. 22, 2021).. Under federal law, the limitations period begins to run when the plaintiff is aware that he has suffered an injury or has enough information to know that

he has been injured. *Id.*; *Russell v. Bd. of Trs.*, 968 F.2d 489, 493 (5th Cir. 1992).

Buntion asserts the basis for his claim lies in the thirty-one year period he has served on death row, "due largely to the State's twenty-year delay in giving him a sentencing trial[.]" ECF No. 6 at 1–2. Accordingly, Buntion knew the factual basis of his claim at his new punishment hearing in 2012—or, under a generous interpretation, in 2016, when his sentence became final. *Buntion v. State*, 482 S.W.3d 58, 65, 106 (Tex. Crim. App. 2016). To the extent Buntion may argue that his claim only became ripe at the turn of thirty-one years, he fails to show that the twenty-year period that ran between his initial trial and his second sentencing hearing—about which he complains—was insufficient to have made him "aware the he ha[d] suffered an injury or ha[d] sufficient information to know that he ha[d] been injured." *Reed*, 995 F.3d at 431.

Alternatively, he fails to show a significant difference in "injury" between when he raised this claim in his 2018 petition, in which he complained of the twenty-seven year period that he served on death row,[7] and the lapse of four years until he has filed his Complaint here. The Court noted this in Buntion's successive federal habeas action in Civil Action No. 4:22-cv-1104:

---

[7] *Buntion v. Davis*, 4:17-cv-02683, ECF No. 4 at 111–14.

14

Both of Buntion's latest habeas claims[8] were available when he filed his earlier federal habeas action. *See Allen v. Ornoski*, 435 F.3d 946, 957 (9th Cir. 2006) (finding that an inmate could have brought his *Lackey* claim in his initial federal petition after only six years of incarceration). Buntion, in fact, has already litigated nearly identical issues in federal court. (*Buntion v. Davis*, 4:17-cv-2683, Docket Entry No. 4 at 101, 111). The only significant difference between Buntion's earlier claims and his current ones is that more time has now passed. Buntion argues that the passage of time renders his old claims previously unavailable—that the certainty of an execution date breathes new life into claims previously resolved by the federal courts. (Docket Entry No. 1 at 34; Docket Entry No. 6 at 5-6). Buntion's argument, however, would eviscerate AEDPA's abuse-of-the-writ provisions and allow an endless succession of federal petitions differing from each other only in the time which had transpired since the inmate's conviction.

*Buntion*, Civ. Action No. 4:22-cv-1104, ECF No. 8, *slip op.* at 3 (footnote omitted).

Regardless, the two-year limitations period has long expired. Buntion therefore cannot demonstrate a likelihood of success on his claim because his claim is time-barred.

### 3. Buntion raises a habeas claim, not a civil rights claim.

Ultimately, Buntion is seeking a determination that would invalidate his sentence—a claim that is, by definition, one for which habeas relief is the only remedy. Certainly, "[t]he line between claims which must initially be pressed

---

[8] In his federal habeas petition, Buntion claimed his death sentence was arbitrarily imposed because the jury's future-dangerousness finding has proven incorrect and also raised a *Lackey* claim.

15

by writ of habeas corpus and those cognizable under § 1983 is a blurry one." *Cook v. Texas Dept. of Criminal Justice Transitional Planning Dept.*, 37 F.3d 166, 168 (5th Cir. 1994). But when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," § 1983 is not an available remedy. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see Skinner*, 562 U.S. at 533–34 (plaintiff "properly invoked § 1983" in suit for DNA testing, where testing might yield results that prove exculpatory but "not inevitable").

Again, Buntion moves for a stay of execution and, in his Complaint, openly requests "a judicial declaration that Plaintiff has been and will continue to be subjected to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments unless and until Defendants are enjoined from executing him," as well as "an injunction prohibiting Plaintiff's execution both on April 21, 2022 and at any time in the future[.]" ECF Nos. 6, 1 at 29–30. Should Buntion receive a favorable judgment here,[9] his sentence would

---

[9] Even if Buntion's claim could be read as a § 1983 challenge to the method of execution due to the duration of his stay on death row, as Buntion alleges here, the Fifth Circuit rejected Buntion's underlying complaint about the length of time that Buntion raised in his first federal habeas petition—first as procedurally defaulted, then alternatively as meritless: "We, like Justice Thomas, are 'unaware of any support in the American constitutional tradition or in th[e] [Supreme] Court's precedent for the proposition that a defendant can avail himself of the panoply of appellate and collateral procedures and then complain when his execution is delayed.'" *Buntion v. Lumpkin*, 982 F.3d 945, 953 (5th Cir. 2020), cert. denied, 142 S. Ct. 3 (2021) (quoting *Knight v. Florida*, 528 U.S. 990 (1999)); *see Ruiz v. Davis*, 850 F.3d 225, 228 (5th Cir. 2017) (federal habeas case); *see White v. Johnson*, 79 F.3d 432, 439–40 (5th Cir. 1996) (federal habeas case) (collecting cases).

functionally be invalidated. Accordingly, his Complaint should be dismissed and treated as a petition for habeas relief.

Further, AEDPA instructs the Court to dismiss any claims presented in a second or successive habeas corpus application, unless the petitioner has first sought—and obtained—authorization from the Fifth Circuit to file the successive claim. 28 U.S.C. § 2244(b)(1), (3); *see Williams v. Thaler*, 602 F.3d 291, 301 (5th Cir. 2010) (citing *id.*); *see also* Rules Governing Section 2254 Cases, R. 9. "Without such authorization, the otherwise–cognizant district court has no jurisdiction to entertain [the] . . . the petition." *Leal Garcia v. Quarterman*, 573 F.3d 214, 219 (5th Cir. 2009); *see also Burton v. Stewart*, 549 U.S. 147, 152–53 (2007); *Williams v. Thaler*, 602 F.3d 291, 305 (5th Cir. 2010); *In re Flowers*, 595 F.3d 204, 205 (5th Cir. 2009); *Crone v. Cockrell*, 324 F.3d 833, 838 (5th Cir. 2003).

Moreover, a "petitioner's failure to seek authorization from an appellate court before filing a second or successive habeas petition 'acts as a jurisdictional bar'" until the Fifth Circuit grants the petitioner permission to file the successive petition. *Williams*, 602 F.3d at 301 (quoting *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000)). This jurisdictional limitation described by § 2244(b) is one of *subject matter*. *Crone*, 324 F.3d at 838 ("[W]e find that the district court did not have subject matter jurisdiction over Crone's

application because Crone did not obtain an order from this Court authorizing the district court to consider the successive application.").

Although 28 U.S.C. § 2244(b) does not specifically set forth what constitutes a "second or successive" petition, the Fifth Circuit has held that a petition "is successive when it either presents a challenge to the petitioner's conviction or sentence that could have been presented in an earlier petition or can be said to be 'an abuse of the writ.'" *Propes v. Quarterman*, 573 F.3d 225, 229 (5th Cir. 2009) (citing *Crone*, 324 F.3d at 836–37).

Again, Buntion filed a federal habeas petition in 2018;[10] that petition included the same basis for the claim he raises now, and the petition was denied. *Buntion*, Civ. Action No. 4:17-cv-02683, ECF No. 4 at 111–14, ECF No. 26 at 38. And again, Buntion raised this same *Lackey* claim in a federal habeas petition filed on April 6, 2022, which the Court dismissed as successive on April 15, 2022. *Buntion*, Civ. Action No. 4:22-cv-1104, ECF Nos. 1, 8, 9. Raising the same claims in successive habeas petitions is the very definition of an abuse of the writ. Such claims "shall be dismissed" pursuant to 28 U.S.C. § 2244(b)(1). There are no exceptions to this mandatory rule. *In re Sharp*, 969 F.3d 527, 528 (5th Cir. 2020).

---

[10] Buntion also raises the same basis for his Complaint in a second habeas petition, still pending before the Court. *Buntion*, No. 4:22-cv-1104, No. 1 at 33–39.

Buntion's petition is successive and must be dismissed. To the extent the Court disagrees, authorization from the Fifth Circuit is required before this Court has jurisdiction to consider it. To address the jurisdictional defect, this Court is authorized to transfer Buntion's petition to the Fifth Circuit. 28 U.S.C. §§ 1631, 2244(b)(3); *see Adams v. Thaler*, 679 F.3d 312, 321–22 (5th Cir. 2012) ("Because we conclude that [the petition] is successive, the district court did not have jurisdiction to consider the petition. Therefore, we conclude that . . . the district court correctly transferred the case to [the Fifth Circuit]."); *Burton*, 549 U.S. at 152 (concluding that petitioner did not seek or obtain appellate authorization, and district court lacked jurisdiction to consider "second or successive" petition). However, dismissal with prejudice is statutorily mandated in this circumstance. 28 U.S.C. § 2244(b)(1).

## III.   The Balance of Equities Does Not Weigh in Favor of a Stay of Execution.

Buntion will not be irreparably injured if a stay is not granted. In his Motion for Stay, Buntion requests a stay of execution "pending the resolution of his Complaint Filed Pursuant to 42 U.S.C. § 1983." ECF No. 6 at 1. But his allegation of the violation of his Eighth and Fourteenth Amendment rights on the basis of the length of his stay on death row has been reviewed and rejected by the federal courts. *Buntion*, 982 F.3d at 953; *see Buntion*, – U.S. –, 142 S. Ct. 3 (2021) (denying certiorari). He will not be irreparably injured if he does

19

not receive a fourth review of his claim.

Lastly, Buntion cannot justify a stay because a stay would further delay enforcement of a long-final judgment. Buntion fails to show Defendants and the victims would not be substantially harmed by a stay or that the public interest favors a stay. *Hill*, 547 U.S. at 584 ("Both the State and the victims of crimes have an important interest in the timely enforcement of a sentence."). Indeed, the State has a compelling interest in the finality of judgment for an individual who has killed a law enforcement officer and is a lifelong felon. And Buntion's abuse of the writ by raising the same claim does not tilt the balance of equities in his favor. *See Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.")

For these reasons, Buntion's motion for a stay of execution should be denied.

## IV.   Buntion's Dilatoriness Requires the Summary Denial of His Stay Motion.

In *Hill*, the Supreme Court stated that "[t]he federal courts can and should protect States from dilatory or speculative suits[.]" 547 U.S. at 585. This Court should heed the Supreme Court's exhortation. Both this Court and the Fifth Circuit have previously endorsed the denial of a stay of execution based solely on a lack of timeliness, independent of other factors, without considering the merits of the underlying claims. *Bible v. Davis*, 4:18–CV–1893, 2018 WL

3068804, at *5 (S.D. Tex. Jun. 21, 2018), aff'd, 739 F. App'x 766 (5th Cir. 2018) (capital plaintiff's "unnecessary delay in filing suit and seeking equitable relief is an independent basis on which the Court will deny relief"); *Berry v. Epps*, 506 F.3d 402, 404–05 (5th Cir. 2007) (per curiam); *White v. Johnson*, 429 F.3d 572, 573–74 (5th Cir. 2005) (per curiam); *Harris v. Johnson*, 376 F.3d 414, 417 (5th Cir. 2004) (per curiam); *see also Brown v. Livingston*, 457 F.3d 390, 391 (5th Cir. 2006); *Smith v. Johnson*, 440 F.3d 262, 263–64 (5th Cir. 2006); *Reese v. Livingston*, 453 F.3d 289, 290–91 (5th Cir. 2006); *Neville v. Johnson*, 440 F.3d 221, 222–23 (5th Cir. 2006) (per curiam). Petitioners who dilatorily raise previously available claims immediately before their execution are not entitled to a stay regardless of whether they state a cognizable claim under Section 1983.

Buntion's plainly dilatory attempts at obtaining a stay of execution are of the type the Supreme Court has cautioned against. *Nelson*, 541 U.S. at 649– 50. As Buntion argued in his Complaint, he had already been incarcerated for twenty years at the time he was re-sentenced in 2012. He raised this *Lackey* claim in his 2018 petition. *Buntion*, No. 4:17-cv-02683, ECF No. 4 at 111–14. He yet again raises this allegation—twice, including his recently-dismissed successive habeas petition—and claims at this late date that his execution should be delayed to review the merits of this successive claim. Such dilatory

tactics should not be countenanced, and Buntion is not entitled to a stay at this late date. *Id.*; *see Whitaker v. Livingston*, 597 F. App'x 771, 774 (5th Cir. 2015) ("This court has clearly held that waiting until an execution date is set or until some point closer to execution would 'serve no purpose but to further delay justice.'") (quoting *Harris*, 376 F.3d at 419); *Kincy v. Livingston*, 173 F. App'x 341, 342–43 (5th Cir. 2006).

Buntion's unjustifiable delay is forcing the Court to depart from regular order and deal with pleadings on what amounts to an emergency basis. It likewise burdens the Defendants, who are forced to respond to these last-minute filings. This Court should refuse to countenance this dilatoriness and follow the Supreme Court's direction in *Hill* by denying a stay solely based on lack of timeliness without considering the merits.

## CONCLUSION

For the foregoing reasons, Buntion's motion for stay of execution should be rejected by the Court.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT C. WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Cara Hanna
CARA HANNA
Assistant Attorney General
State Bar No. 24055622
Southern District No. 915870
Post Office Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email:  cara.hanna@oag.texas.gov

*Counsel for Respondent*

## CERTIFICATE OF SERVICE

I do herby certify that on April 18, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to:

David R. Dow
University of Houston
4604 Calhoun Road
Houston, TX 77204-6060
(p) 713-743-2171 (f) 713-743-2131
ddow@uh.edu

Jeffrey R. Newberry
University of Houston
4604 Calhoun Road
Houston, TX 77204-6060
(p) 713-743-6843 (f) 713-743-2131
jrnewber@central.uh.edu

/s/ Cara Hanna
CARA HANNA
Assistant Attorney General

23